[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
This action is one for damages, wherein the plaintiffs, George Howe, David Howe and Gary Powell, Sr., allege that the defendants, Stuart Amusement Corp. d/b/a Riverside Park, and Riverside Park Food Service d/b/a Riverside Park, served alcoholic beverages to an intoxicated patron, who was later involved in an automobile accident that left the plaintiffs seriously injured. The defendants have moved for summary judgment, claiming: (1) that the action is barred by the time limitation contained in the Connecticut Dram Shop Act, General Statutes 30-102; (2) that the action is barred by the plaintiffs' failure to comply with the notice provisions of said section 30-102; and (3) that the action is barred by the plaintiffs' failure to comply with notice requirements of Mass. Gen. L. Ch. 231 60J.
Because this action implicates the laws of more than one state, resolution of this motion will require a choice of law analysis.
According to the plaintiffs, on the evening of March 29, 1986, Richard A. Powers attended the stock car races at the defendants' establishment, Riverside Park, located in Agawam, Massachusetts. There, it is alleged, the defendants served Powers alcoholic beverages while he was intoxicated. After leaving the defendants' premises, and while driving on a Connecticut highway, Powers crossed the center line and collided head-on with a van being driven by the plaintiffs. The collision killed Powers, and the plaintiffs suffered serious personal injuries. Powers is not a party to this action. CT Page 10674
The plaintiffs, residents of Massachusetts, filed suit in Hartford Superior Court. The complaint was served on February 25, 1988. No written notice of the claim was sent to the defendants before or after the commencement of the suit.
The defendants have moved for summary judgment in accordance with their special defenses that the complaint is barred by the statute of limitations contained in the Connecticut Dram Shop Act, General Statutes 30-102, and that the procedural notice requirements for a valid "dram shop" action under either Connecticut or Massachusetts law have not been met.
A. Summary Judgment
Summary judgment is appropriate where the pleadings, affidavits, and any other proof submitted show: (1) that there is no genuine issue of material fact; and (2) that the moving party is entitled to judgment as a matter of law. Practice Book 384; Strada v. Connecticut Newspapers, 193 Conn. 313, 316-17,477 A.2d 1005 (1984). Summary judgment may be granted where the applicable limitations period has lapsed. Burns v. Hartford Hospital, 192 Conn. 451, 460, 472 A.2d 1257 (1984).
In the instant case, the facts germane to this motion are not in dispute. The parties appear to be in agreement that both the alleged acts of negligence and the injuries complained of occurred during the late day and early morning of March 29-30, 1986; that the complaint was served on February 25, 1988; that the plaintiffs did not provide notice of the claim prior to the commencement of this action; and that the plaintiffs did not file affidavits setting forth the factual grounds relied upon within 90 days of filing the complaint. There is no genuine issue of material fact.
At issue is whether the defendant is entitled to judgment on these facts as a matter of law. Resolution of this issue depends on a determination of what laws apply, which is a question of law for the court. See O'Connor v. O'Connor,201 Conn., 632, 519 A.2d 13 (1986) (treating choice of law issue as a matter of law).
B. Determining Choice of Law Rules
There is at least some uncertainty about what rules are to be applied in situations presenting a conflict of laws. This uncertainty exists because the choice of law rules both nationally and in Connecticut have been in a state of flux, and the Connecticut Supreme Court has moved from rule to rule CT Page 10675 cautiously, declining to completely overrule its precedents. These rules have evolved from strict adherence to the law of the place of injury, or lex loci delicti, Menczer v. Menczer,160 Conn. 563, 564-65, 280 A.2d 875 (1971), to the "most significant relationship" text advanced by the Restatement (Second) of Conflict of Laws, O'Connor v. O'Connor, 201 Conn. 632,519 A.2d 13 (1986). Recently, the Supreme Court, in the context of a workers' compensation case has utilized a third approach, which may be characterized as a "best law" approach. Cleveland v. U.S. Printing Ink, Inc., 218 Conn. 181, 588 A.2d 194 (1991).
Because the O'Connor case is the most recent Supreme Court case that deals with choice of law rules in tort cases, generally that case provides the appropriate choice of law rules. However, it should be noted that O'Connor does not clearly state what choice of laws rules are to be applied, even in tort cases, making necessary an interpretation of the case and its subsequent treatment by the courts of this state.
1. "Substantive" Law
In moving from the traditional rule of lex loci delicti to the Restatement's "most significant relationship" test, the Supreme Court in O'Connor did not unequivocally state that one approach should be applied rather than the other. Instead the case states that a court should "incorporate the guidelines of the Restatement as the governing principles for those cases in which application of the doctrine of lex loci would produce an arbitrary, irrational result." O'Connor, supra, 650.
Despite the apparent clarity of the quoted language, the O'Connor case negatively critiques the traditional rules, describing them as "legal anachronism" that have "lost [their] legal underpinnings," and promotes the Restatement rules in a way that has caused many courts to conclude, notwithstanding the literal language contained in the decision, that the most significant relationship test is the guiding choice of law rule governing all tort cases in Connecticut. See Cumis Insurance Society, Inc. v. Windsor Bank and Trust Co., 736 F. Sup. 1226
(D.Conn. 1990); McKernan v. United Technologies Corp.,717 F. Sup. 60 (D.Conn. 1989); Resnick v. Sikorsky Aircraft,660 F. Sup. 415 (1987); Economic v. Borg-Warner Corp., 652 F. Sup. 1242
(1987). Some courts interpreting O'Connor, however, have maintained that lex loci continues to be the general rule, with the Restatement providing an exception only where the traditional rule produces an arbitrary or irrational result. Icelandic Coast Guard v. United Technologies Corp., 722 F. Sup. 942
(D.Conn. 1989); Feld v. Sturm Ruger Corp., 721 F. Sup. 403
(D.Conn. 1989); Katz v. Gladstone, 673 F. Sup. 76 (D.Conn. 1987). CT Page 10676
The Connecticut Supreme Court's interpretation of O'Connor in Cleveland v. U.S. Printing Ink, Inc., supra, tends to support the position that the most significant relationship test provides the proper choice of law rule in tort cases. In that case, the majority opinion states that "we are not whole-heartedly committed to the application of lex loci as the sole approach to choice of law in all torts cases." Id., 191, citing O'Connor, supra, while the dissenting opinion characterizes O'Connor as abandoning altogether the doctrine of lex loci in favor of the most significant relationship test (per Shea, J., joined by Callahan and Covello, Js.).
In any event, even though the O'Connor court ostensibly rejected the lex loci approach only when the traditional rules produce an "arbitrary or irrational result," this qualification "effectively eviscerates the [lex loci] rule in virtually all conflict situations," since a court would need to undertake a "most significant relationship" analysis in order to determine whether its result is arbitrary or irrational. See Note, Connecticut's New Approach To Choice of Law: O'Connor v. O'Connor, 20 Conn. L. Rev. 231, 255-56 (1987). Thus, regardless of which reading is given the O'Connor case, its mandate is to apply the most significant relationship test to all tort cases involving the conflict of laws. The indecision which remains pertains to which rule to cite when the lex loci and most significant relationship approaches produce the same result.
Based on the foregoing, we conclude that the determinative choice of law legal test is the most significant relationship test, as it was enunciated and applied in O'Connor v. O'Connor, supra.
2. "Procedural Law and the Statutes of Limitations
The traditional choice of law rules distinguish between substantive and procedural law, with the law of the forum or lex fori, controlling those issues which are construed as governing procedure. Morris Plan Industrial Bank v. Richards,131 Conn. 671, 673, 42 A.2d 147 (1945); Orr v. Ahearn, 107 Conn. 174,176, 139 A. 691 (1928). It is not clear whether the O'Connor case overrules this principle, or whether the traditional rule of lex fori was to remain intact.
In making this determination, it is helpful to note that the O'Connor case adopted in full applicable sections of the Restatement (Second) Conflict of Laws, and that the Restatement favors application of forum law to matters of procedure. See Restatement (Second) conflict of Laws 122 et. seq. We conclude that matters of procedure are governed by CT Page 10677 the law of the forum.
In ascertaining the applicable statute of limitations, however, the Restatement favors the jurisdiction with the most significant relationship to the cause of action, with the "black letter" caveat that a forum apply its own statute of limitations barring the claim, and that the forum apply its own statute of limitations permitting the claim, unless a state with a more significant relationship to the parties or the occurrence would bar the claim. Restatment (Second) Conflict of Laws 143. This rule is substantially similar to the approach advocated in O'Connor v. O'Connor, supra, in that it favors forum law except in cases where the forum is the less interested of two or more jurisdictions. This rule will be used to determine the applicable statute of limitations.
C. Ascertaining Applicable Law
Again, the defendant has raised three issues of law in support of its motion for summary judgment, namely: (1) whether the one-year time limitation contained in the Connecticut Dram Shop Act, General Statute 30-102, bars this action; (2) whether the notice provisions contained in that statute bar this action; and (3) whether the plaintiffs' failure to comply with the notice and affidavit requirement of Mass. Gen. L. Ch. 231 60J bars this action. This section will apply the appropriate choice of law rule (or rules) to ascertain the applicable law with respect to each issue, and will then determine whether or under which circumstances defendants will be entitled to summary judgment.
1. Statute of Limitations
Section 143 of the Restatement favors application of a forum statute of limitations that bars an action. Restatement, supra. If applied, the limitations period contained in the Connecticut Dram Shop Act, General Statutes 30-102, would bar this action. Section 30-102 states that "no action under the provisions of this section shall be brought but within one year of the act or omission complained of."
The applicability of the limitations period contained in the Connecticut Dram Shop Act, however, is limited by its own terms to actions brought under its own provisions. Thus, the one-year limitations period will apply only if the cause of action is deemed to arise under the Connecticut Dram Shop Act. Under the choice of law principles enunciated in the O'Connor case, the Connecticut Dram Shop Act should be applied as substantive law only if the State of Connecticut is deemed to have the most significant relationship to the cause of CT Page 10678 action.
The Connecticut Supreme Court has stated that "[t]he rights and liabilities of the parties with respect to an issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and to the parties as stated in [the Restatement (Second) Conflict of Laws] 6." O'Connor, supra, 650. Section 6 of the Restatement provides that:
 (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
 (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
 (a) the needs of the interstate and and international systems,
(b) the relevant policies of the forum,
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
 (e) the basic policies underlying the particular field of law,
 (f) certainty, predictability and uniformity of result, and
 (g) ease in the determination and application of the law to be applied.
Restatement (Second) Conflict of Laws 6.
The relative weights of each of these factors is to be considered, rather than their number, and independent weight is not to be attached to any of these factors, as they are "ancillary to the goal of providing rational, fair, choice of law rules." O'Connor, supra, 651.
The Restatement analysis then turns to a set of "black letter" rules of priority to facilitate the application of 6 to tort cases. The "most significant relationship" determination CT Page 10679 is made with primary reference to these criteria.
 (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in 6.
 (2) Contracts to be taken into account in applying the principles of 6 to determine the law applicable to an issue:
(a) the place where the injury occurred,
 (b) the place where the conduct causing the injury occurred,
 (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
 (d) the place where the relationship, if any, between the parties is centered.
Restatement (Second) Conflict of Laws 145.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
Applying these factors to the instant case, we find that factor (a) favors the law of Connecticut, the state where the accident occurred, while factors (b), (c) and (d) favor the law of Massachusetts, which is the place of the conduct causing the injury, the domicile of both plaintiffs and defendants, and the place where the relationship, if any, between the parties is centered. Of these factors, factor (a) is entitled to the least weight because the injury was caused by an accident, which by its very nature is a fortuitous occurrence, although the foreseeability that defendants' conduct could cause injury in Connecticut is relevant. Factors (b) and (c), on the other hand, are entitled to greater weight. This is a dispute between three domiciliaries of Massachusetts and two corporate citizens of Massachusetts. Massachusetts has a strong interest in regulating the actionable conduct in this case, and in providing rules for its purveyors of alcoholic beverages, from whose premises each patron must of necessity traverse its roads.
Applied in a manner consistent with the criteria set forth in 6 of the Restatement, the state with the most significant CT Page 10680 relationship to the cause of action in Massachusetts. Therefore, the rights and liabilities of the parties should be determined by reference to the laws of Massachusetts. And, according to the plain language contained therein, the time limitation period contained in the Connecticut Dram Shop Act may not be applied to actions brought under the laws of Massachusetts. Therefore, the defendants are not entitled to judgment as a matter of law on this issue.
The defendants have also argued that time limitations are procedural, and that the law of the forum governs matters of procedure. While we have said that statutes of limitations are governed by the most significant relationship test as stated in section 143 of the Restatement, a reviewing court might decline to adopt section 143, and opt for the traditional rule of lex fori. However, as a matter of Connecticut law, the limitations period contained in the Connecticut Dram Shop Act is not procedural, but substantive, and would therefore not be applied under the lex fori rule.
Where a specific time limitation is contained within a statute that creates a right of action where none existed at common law, that limitation is not to be treated as an ordinary statute of limitation, but rather as a limitation on the liability itself, and not on the remedy alone. Ecker v. West Hartford, 205 Conn. 219, 232-33, 530 A.2d 1056 (1987). In such cases, a statute of limitations is to be characterized as substantive. Id. Because the Connecticut Dram Shop Act limitations period is contained within the Act itself, and because the Act creates the right being sued upon, where none existed at common law, Quinnett v. Newman, 213 Conn. 343, 345,568 A.2d 786 (1999), the limitations period contained in the Connecticut Dram Shop Act is substantive, rather than procedural. Therefore, the limitation period contained within the Act is not applicable under the traditional rule of lex fori, and the defendants are not entitled to judgment as a matter of law on this issue.
2. The Connecticut Dram Shop Act Notice Requirement
The defendants next claim that this action is barred by the plaintiffs' failure to comply with the notice requirements of the Connecticut Dram Shop Act, which provides, in pertinent part, that "the aggrieved person or persons shall give written notice to such seller within sixty days of the occurrence of such injury to person or property of his or their intention to bring an action under this section." General Statutes 30-102.
Although the Connecticut Supreme Court has not addressed the sixty day notice provision of the Dram Shop Act, CT Page 10681 the Superior Court has addressed the issue, and has concluded that such notice involves subject matter jurisdiction of the court and cannot be waived. See O'Neill v. Hendel, 16 Conn. L. Trib. 34, p. 619 (1990, Hennessey, J.). Thus, if the Act applies, the defendants will be entitled to judgment as a matter of law based on the plaintiffs' failure to provide notice within sixty days of the occurrence.
Like the statute of limitations, the notice provision of the Connecticut Dram Shop Act by its own terms applies only to acts brought thereunder. The Act provides for damages only if the aggrieved person or persons "give written notice to such seller within sixty days of the occurrence of such injury to person or property of his or their intention to bring an action under this section." General Statutes 30-102. The plaintiffs have pled this action as one arising from the laws of Massachusetts, not as one arising under the laws of Connecticut, see Complaint, Counts 1, 2, and 3, and we have said that the action does indeed arise under the substantive law of Massachusetts. Therefore, the notice provision of the Connecticut Dram Shop Act, by its own terms, does not apply to the instant cause of action, and the defendants are therefore not entitled to judgment as a matter of law on this issue.
The defendants have also argued that the notice requirement is procedural and therefore governed by lex fori. No reported case has considered whether the notice requirement is to be characterized as substantive or procedural. However, the notice requirement is closely analogous to the Act's statute of limitations, and may be characterized as substantive or procedural according to the guidelines provided by Ecker v. West Hartford, supra, 232-33. Both the notice requirement and the limitations period were enacted to allow a defendant the opportunity to gather evidence while the events are still fresh, to prevent enforcement of stale claims, and to provide a period for repose. See Zapata v. Burns, 207 Conn. 496, 542 A.2d 700
(1988); Stevens v. Arace, 19 Conn. L. Trib. 24, p. 462 (1988, Purtill, J.). Like the statute of limitations, the notice requirement is contained within the Dram Shop Act itself. The Dram Shop Act creates a right of action where none existed at common law, Quinnett v. Newman, supra. Under the rule of Ecker v. West Hartford, supra, the notice provision is substantive and not procedural law. Under, the most significant relationship test adopted by O'Connor, the laws of Massachusetts govern the substantive rights and liabilities. The defendants are therefore not entitled to judgment as a matter of law on this issue.
3. The Massachusetts Notice Requirement CT Page 10682
The defendants' third argument is that if the court chooses to apply Massachusetts law, then the plaintiffs' claims are barred under Massachusetts General Laws Ch. 231 60J, which states that "[t]he plaintiff shall file, together with his complaint, or at such later time not to exceed ninety days thereafter, an affidavit setting forth sufficient facts to raise a legitimate question of liability appropriate for judicial inquiry." From the record, it does not appear that any such affidavits were filed until February 19, 1990, almost two years after the original complaint was filed and well beyond the period permitted by Mass. Gen. L. Ch. 231 60J. Defendants argue that this non-compliance requires dismissal, while the plaintiffs argue that dismissal is not required, citing Croteau v. Swansea Lounge, Inc., 402 Mass. 429, 522 N.E.2d 967 (1988).
A threshold question is whether, under the applicable conflict of law rules, the Massachusetts affidavit requirement should be applied. In making this determination, it should be noted that the Restatement cautions against rigid characterization of issues as "procedural" or "substantive," instead directing the courts to "face directly the question whether the forum's rule should be applied." Restatement, supra. 122, comment b. This admonition seems most appropriate where rigid characterization may lead to the kind of "arbitrary, irrational result" that the Supreme Court has attempted to avoid.
Facing directly the question whether the Massachusetts rule should be applied, we conclude that the requirement should be applied. First, the plaintiffs have pled this case as arising under the laws of Massachusetts, and have so argued in this motion for summary judgment. Second, this court has held that this action is governed by Massachusetts' law, and the filing and the time requirements are prerequisite to a "dram shop" action brought under Massachusetts law. Third, the notice requirement of the Connecticut Dram Shop Act was held to be substantive, and to distinguish the two provisions in order to find that one is substantive while the other is procedural would result in the application of no notice requirement, despite the fact that both states require the plaintiff, in one way or another, to put the defendant on notice of either the existence of a claim or the content of the factual allegations being made against it. These considerations impel application of the affidavit and time requirements of Mass. Gen. Laws Ch. 231 60J.
This court thus determines that the Massachusetts affidavit requirement applies in the instant case, and therefore applies the statute as it would be construed by the highest tribunal of that state. S.M. Lynne Co. v. Geraghty, 204 Conn. 361, 368,525 A.2d 756 (1987). In Croteau v. Swansea Lounge, the CT Page 10683 Massachusetts Supreme Judicial Court stated that both the filing of the affidavit and the time requirement are mandatory, but that it is within the sound discretion of the trial judge to enlarge the time for filing the affidavit. Id., 422. A motion to enlarge time under the Massachusetts Rules of Civil Procedure may be denied for lack of excusable neglect, id., and a judge may condition the exercise of his or her discretion on the plaintiff's amelioration of any prejudice to the defendant arising out of the plaintiff's failure to act in a timely manner, id., 422-23. In any event the failure to timely file the appropriate affidavits does not automatically divest the court of authority to hear the case. Id., 421-22.
The party moving for summary judgment has the burden of showing not only the absence of any genuine issues as to all material facts, but also that the indisputable facts entitled that party to judgment as a matter of law. Fogarty v. Rashaw,193 Conn. 442, 445, 476 A.2d 582 (1984). In order to be entitled to judgment as a matter of law on the issue of the plaintiffs' failure to file affidavits within the time period required by Mass. Gen. Laws Ch. 231 605, it is incumbent upon the defendants to show either that the plaintiffs have been refused permission to extend or enlarge the period for filing the required affidavits, or the existence of indisputable facts which show that such a motion could not be granted as a matter of law. The defendants have not made their required showings, and thus have not met their burden on this motion for summary judgment. Accordingly, defendants' motion for summary is denied without prejudice.
HENNESSEY, J.