# WILTON MEADOWS LIMITED PARTNERSHIP
## *v.* SALLY CORATOLO
### (SC 18571)

Norcott, Katz, Palmer, McLachlan, Eveleigh and Vertefeuille, Js.

Argued October 19, 2010—officially released January 5, 2011*

*Angelo Maragos,* with whom was *Anne Jasorkowski,* for the appellant (plaintiff).

*Carmine Perri,* for the appellee (defendant).

*Kari L. Olson* and *Everett E. Newton* filed a brief for the Connecticut Association of Healthcare Facilities, Inc., as amicus curiae.

*Opinion*

NORCOTT, J. The principal issue in this appeal is whether nursing home expenses are included within the scope of subsection (b) (4) of the spousal liability statute, General Statutes § 46b-37.[1] The plaintiff, Wilton

---

* January 5, 2011, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 46b-37 provides in relevant part: "(a) Any purchase made by either a husband or wife in his or her own name shall be presumed, in the absence of notice to the contrary, to be made by him or her as an individual and he or she shall be liable for the purchase.

"(b) Notwithstanding the provisions of subsection (a) of this section, it shall be the joint duty of each spouse to support his or her family, and both shall be liable for: (1) The reasonable and necessary services of a physician or dentist; (2) hospital expenses rendered the husband or wife or minor child while residing in the family of his or her parents; (3) the rental of any

Meadows Limited Partnership, doing business as Wilton Meadows Rehabilitation and Health Care, appeals[2] from the trial court's grant of summary judgment in favor of the defendant, Sally Coratolo, in this action filed by the plaintiff to collect an unpaid balance due for the care and services the plaintiff had rendered to the defendant's now deceased husband, Carmen Coratolo (decedent). On appeal, the plaintiff claims that the trial court improperly: (1) concluded that the care and services it had provided to the decedent were not "article[s]," or were not purchased in "support of the family" under § 46b-37 (b) (4); (2) failed to treat the defendant's motion for summary judgment as a motion to strike and thus precluded the plaintiff from amending or repleading its complaint; and (3) concluded that there were no issues of material fact precluding summary judgment. We disagree with the plaintiff and, accordingly, affirm the judgment of the trial court.

The record, viewed in the light most favorable to the nonmoving plaintiff for purposes of reviewing the trial court's grant of summary judgment, reveals the following facts and procedural history. On or about August 14, 2006, the decedent was admitted to the plaintiff's "licensed chronic care and convalescent facility . . . ." From August 14, 2006, until October 10, 2007, the plaintiff provided the decedent with care and services, including "assistance with daily living activities, general nursing care, meals, room and board, [and] the administration of medication." From August 14, 2006, until March 7, 2007, the period during which the disputed unpaid balance of $60,795.32 accrued, the decedent did

dwelling unit actually occupied by the husband and wife as a residence and reasonably necessary to them for that purpose; and (4) *any article purchased by either which has in fact gone to the support of the family, or for the joint benefit of both.* . . ." (Emphasis added.)

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

not have medical insurance or medicaid coverage. Effective March 8, 2007, the decedent was granted medicaid benefits that covered the decedent's expenses. The decedent died on October 25, 2007.

The plaintiff commenced the present action on April 21, 2008, in a one count complaint alleging that the defendant was liable, pursuant to § 46b-37, for the care and services that the plaintiff had provided to the decedent. The defendant filed an answer on June 17, 2008, denying liability for the outstanding balance, and, on June 20, 2008, moved for summary judgment, asserting that she could not be held liable for the decedent's nursing home expenses under § 46b-37.

The trial court subsequently granted the defendant's motion for summary judgment, concluding that the plaintiff lacked a viable cause of action against the defendant under § 46b-37 (b) (4). Specifically, the trial court concluded that the statute's language was plain and unambiguous, and that the term "article" did not apply to the care and services that the plaintiff had provided to the decedent. Further, although the trial court opined that the term article could be interpreted to include food and medicine, it concluded that § 46b-37 (b) (4) nevertheless did not provide the plaintiff with a remedy because the decedent had consumed the food and medicine personally, and, thus, these "article[s]" could not have gone to the "support of the family" within the meaning of the statute. The trial court also determined that the motion for summary judgment was an appropriate vehicle for challenging the legal sufficiency of the complaint because § 46b-37 (b) (4) ultimately did not provide the plaintiff with a valid cause of action. Accordingly, the court granted the defendant's motion for summary judgment and rendered judgment in her favor. This appeal followed.

On appeal, the plaintiff contends that the trial court improperly: (1) interpreted § 46b-37 (b) (4) to exclude

the care and services it had provided to the decedent; (2) failed to treat the defendant's motion for summary judgment as a motion to strike, thus precluding the plaintiff from amending its complaint or repleading its claims; and (3) granted the motion for summary judgment, despite the presence of genuine issues of material fact.

"Before addressing [the plaintiff's] arguments, we set forth the applicable standard of review of a trial court's ruling on motions for summary judgment. Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 786–87, 967 A.2d 1 (2009).

I

We begin with the plaintiff's claim that the trial court improperly construed § 46b-37 (b) (4) to exclude the

care and services it had provided to the decedent. The plaintiff argues specifically that the trial court improperly: (1) interpreted the term article to exclude the plaintiff's care and services; (2) interpreted the phrase support of the family to exclude support, in the form of food and medicine, provided solely to an individual family member; and (3) construed § 46b-37 (b) (4) too narrowly.[3] In response, the defendant primarily contends that the trial court properly construed the statute to exclude nursing home expenses from liability under § 46b-37, and that, in the absence of explicit language to the contrary, the term article should not be construed to include nursing home care and services, nor should one spouse's consumption of food and medicine fall within the scope of the phrase support of the family. We conclude that § 46b-37 (b) (4) does not include nursing home expenses within its scope.

The question of whether nursing home expenses fall within the scope of § 46b-37 (b) (4) is one of statutory interpretation over which we exercise plenary review. "The principles that govern statutory construction are

[3] The amicus curiae Connecticut Association of Healthcare Facilities, Inc., has filed a brief arguing, inter alia, that: (1) the legislature originally intended § 46b-37 (b) (2) to apply to nursing homes "because the care that modern nursing homes provide today is precisely the care that 'hospitals' provided when the statute was first enacted"; and (2) § 46b-37 (b) (4) "applies because [the decedent's] nursing home care and the 'articles' associated with that care are quintessential elements of 'family support' within the meaning of the statute." Although the plaintiff adopted these arguments in its reply brief, it, in fact, expressly stated in its principal brief to this court that it "did not allege that [the] care and services rendered were those of a physician, dentist or hospital under the statute . . . ." We therefore do not address the specific issue of whether "hospital expenses" include nursing home expenses, as "[i]t is a well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *State* v. *Jose G.*, 290 Conn. 331, 341 n.8, 963 A.2d 42 (2009). Nonetheless, we note that our analysis of the relationship between § 46b-37 (b) and General Statutes § 19a-550; see footnote 8 of this opinion; essentially forecloses the construction proffered by the amicus. See also part II of this opinion.

well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Grady* v. *Somers*, 294 Conn. 324, 332–33, 984 A.2d 684 (2009). "A statute is ambiguous if, when read in context, it is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Hartford/ Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 197–98, 3 A.3d 56 (2010).

In accordance with § 1-2z, we begin with the text of § 46b-37 (b), which provides in relevant part: "Notwithstanding the provisions of subsection (a) of this section, it shall be the joint duty of each spouse to support his or her family, and both shall be liable for . . . (4) any article purchased by either which has in fact gone to the support of the family . . . ." We have previously stated that, "[b]ecause § 46b-37 (b) is in derogation of the common law and creates liability where formerly none existed it should be strictly construed and not

enlarged in its scope by the mechanics of construction." *Yale University School of Medicine* v. *Collier*, 206 Conn. 31, 37, 536 A.2d 588 (1988). "[T]he operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope. The court is to go no faster and no further than the legislature has gone." (Internal quotation marks omitted.) Id., 36–37.

With these principles of strict construction in mind, we first turn to the meaning of the term article. Section 46b-37 does not explicitly define article or enumerate what qualifies as an article under the statute. The plaintiff contends that the term article is subject to multiple interpretations and could be construed to include services as well as individual items. The plaintiff further argues that the term article includes the care and services it provided to the decedent, including "assistance with daily living activities, general nursing care . . . [and] the administration of medication." We disagree.

"In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." General Statutes § 1-1 (a). "If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Key Air, Inc.* v. *Commissioner of Revenue Services*, 294 Conn. 225, 235, 983 A.2d 1 (2009). The word article is defined consistently as an individual item or thing, or a member of a particular class. For example, Merriam-Webster's Collegiate Dictionary (10th Ed. 1993), defines article as, inter alia, "a member of a class of things" or "a thing of a particular and distinctive kind . . . ." See also Webster's Third New International Dictionary (defining article to mean, inter alia, "[a] distinct part" or "[s]omething

considered by itself and as a part from other things of the same kind or from the whole of which it forms a part; also, a thing of a particular class or kind, as distinct from a thing of another class or kind; as, an article of merchandise"); Black's Law Dictionary (9th Ed. 2009) (defining article as "[g]enerally, a particular item or thing"). The plain meaning of the word article by itself, therefore, clearly and unambiguously refers to a tangible item and excludes the plaintiff's care and services.[4] The word article, however, could reasonably be construed to include food, medicine or many other items that are associated with nursing home care, rendering § 46b-37 (b) (4) ambiguous on that point, an ambiguity that is not conclusively resolved by reference to the related statutes.[5] Accordingly, we will next examine

---

[4] The plaintiff cites *Katz* v. *Cohn*, 122 Conn. 338, 189 A. 594 (1937), for the proposition that care and services come within the scope of the term article. The plaintiff's reliance on that case, however, is misplaced. In *Katz*, we determined that the husband had the right to recover damages to compensate for the future medical care of his injured wife residing at home. Id., 342–43. In reaching that conclusion, we noted that "[s]ervices to a wife living with her husband made necessary by personal injuries which she has suffered are within the duty of a husband to 'support his family . . . .'" Id., 341. The statutory provision under which we decided *Katz*, however, addressed only "the duty of the husband to support his family"; (internal quotation marks omitted) id.; we did not explicitly conclude that the home care services came within the meaning of the term article, and did not even address the "article purchased" provision of the statute. *Katz* is, therefore, not controlling.

[5] We note that the on point Superior Court cases cited by both parties, and the trial court decision in the present case, illustrate the ambiguity of § 46b-37 (b) with respect to the issue herein. Compare *Abbott Terrace Health Center, Inc.* v. *Joyce*, Superior Court, judicial district of Waterbury, Docket No. CV-07-5005081 (May 5, 2008) (granting defendant's motion to strike because "§ 46b-37 [b] does not provide that spouses are liable for nursing home expenses of the other spouse"), and *Olympus Healthcare Group, Inc.* v. *Fazo*, Superior Court, judicial district of Waterbury, Docket No. CV-02-0173524-S (July 31, 2003) (granting defendant's motion to strike nursing facility's claim that "care and services" it provided to defendant's husband were "hospital expenses" and concluding that "[§] 46b-37 does not impose liability for nursing home care"), with *Jewish Home for the Aged, Inc.* v. *Nuterangelo*, Superior Court, judicial district of New Haven, Docket No. CV-04-0489608-S (December 10, 2004) (denying defendant's motion to strike

the relevant extratextual sources to determine whether food and medicine that have been provided in the context of nursing home care are included within the scope of § 46b-37 (b).

"The principle of legislative consistency is vital to our consideration of the subject statute's relationship to existing legislation . . . governing the same subject matter . . . . [T]he legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . [T]he General Assembly is always presumed to know all the existing statutes and the effect that its action or [nonaction] will have upon any one of them. . . . Thus, in considering whether § [46b-37 (b) (4)] is applicable to [nursing home expenses] in the present case, we are bound to consider the existence of other statutes and regulations concerning [nursing homes and spousal liability] in order to ensure that our construction of the statute makes sense within the overall legislative scheme." (Citations omitted; internal quotation marks omitted.) *Sokaitis* v. *Bakaysa*, 293 Conn. 17, 23, 975 A.2d 51 (2009).

We look first to the remaining subdivisions of § 46b-37 (b), which provide for joint spousal liability for: "(1) The reasonable and necessary services of a physician

because nursing home "alleg[ing] liability for services that 'have gone to the support of the family' " had stated sufficient cause of action under § 46b-37 [b] [4]), and *I.V. Services of America, Inc.* v. *Martin*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-93-0527319-S (December 3, 1993) (granting plaintiff's motion to cite in defendant's husband because husband had "unavoidable statutory duty to pay for medical services rendered to his wife" under § 46b-37 [b]).

or dentist; (2) hospital expenses rendered the husband or wife or minor child while residing in the family of his or her parents; [and] (3) the rental of any dwelling unit actually occupied by the husband and wife as a residence and reasonably necessary to them for that purpose . . . ." As an initial matter, we note that these subdivisions expressly enumerate specific types of services and expenses for which a spouse would be liable, but do not mention nursing home expenses. Although by no means dispositive, the absence of a specific reference to nursing home expenses is conspicuous, especially given the legislature's numerous opportunities to amend the statute to include nursing home expenses. Indeed, since 1903, when the statute was first amended to include the language establishing liability for the "services of a physician"; Public Acts 1903, c. 9; the legislature has amended the statute several times. See Public Acts 2001, No. 01-195, § 35; Public Acts 1992, No. 92-140; Public Acts 1988, No. 88-364, § 58; Public Acts 1978, No. 78-230, § 17; Public Acts 1977, No. 77-288, § 1; see also Public Acts 1957, No. 191 (amended to include "services of a . . . dentist"); Public Acts 1943, No. 166 (amended to include "hospital expenses"); cf. Public Acts 1935, c. 60.[6] Certainly, if the legislature had intended to extend spousal liability to include nursing home expenses, it could have expressly done so, as it did, for example, with hospital expenses in § 46b-37 (b) (2). Because "[w]e are not permitted to supply statutory language that the legislature may have chosen to omit"; (internal quotation marks omitted) *Dept. of Public Safety* v. *Board of Labor Relations*, 296 Conn. 594, 605, 996 A.2d 729 (2010); we decline the plaintiff's invitation to do so now.[7]

---

[6] We have reviewed the applicable legislative history and have determined that there is nothing further on point to help us resolve the issue before us.

[7] We note that other states have drafted their spousal liability, or family expense, statutes more broadly, thereby enabling third party beneficiaries to recover their unpaid debts more easily. See, e.g., Colo. Rev. Stat. § 14-6-110 (2010) ("[t]he expenses of the family . . . are chargeable upon the

Moreover, the relationship of § 46b-37 (b) to General Statutes (Sup. 2010) § 19a-550,[8] which establishes a "patients' bill of rights for any person admitted as a patient to any nursing home facility or chronic disease hospital," compels a strict reading of the spousal liability statute. Significantly, General Statutes (Sup. 2010) § 19a-550 (b) provides in relevant part: "[E]ach such patient . . . (26) on or after October 1, 1990, shall not be required to give a third-party guarantee of payment to the facility as a condition of admission to, or continued stay in, the facility . . . ." This statutory prohibition against requiring a third party guarantor as a condition of admission is at odds with the plaintiff's interpretation of § 46b-37 (b) (4), which would construe

property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately"); Haw. Rev. Stat. § 572-24 (2006) ("[b]oth spouses of a marriage . . . shall be bound to maintain, provide for, and support one another during marriage, and shall be liable for all debts contracted by one another for necessaries for themselves, one another, or their family during marriage"); Iowa Code Ann. § 597.14 (West 2001) ("[t]he reasonable and necessary expenses of the family . . . are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately"); Mass. Ann. Laws c. 209, § 1 (LexisNexis 2003) ("both spouses shall be liable jointly or severally for debts incurred on account of necessaries furnished to either spouse or to a member of their family"); Utah Code Ann. § 30-2-9 (2007) ("[t]he expenses of the family . . . are chargeable upon the property of both husband and wife or of either of them, and in relation thereto they may be sued jointly or separately"). As the Connecticut General Assembly could have specifically enumerated nursing home expenses as a basis for liability, it also could have drafted § 46b-37 broadly to provide for spousal liability for family expenses generally.

[8] General Statutes (Sup. 2010) § 19a-550 (b) provides in relevant part: "There is established a patients' bill of rights for any person admitted as a patient to any nursing home facility or chronic disease hospital. . . . The patients' bill of rights shall provide that each such patient . . . (26) on or after October 1, 1990, shall not be required to give a third-party guarantee of payment to the facility as a condition of admission to, or continued stay in, the facility; [and] (27) is entitled to have the facility not charge, solicit, accept or receive any gift, money, donation, third-party guarantee or other consideration as a precondition of admission or expediting the admission of the individual to the facility or as a requirement for the individual's continued stay in the facility . . . ."

that statute to include nursing home expenses. Under the plaintiff's construction, § 46b-37 (b) (4) would make the spouse of a nursing home resident "primarily liable by raising an implied promise from the [resident spouse's] use of goods in the support of the family"; (internal quotation marks omitted) *Mayflower Sales Co.* v. *Tiffany*, 124 Conn. 249, 251, 198 A. 749 (1938); and thus would be inconsistent with the mandate against conditioned liability set forth in § 19a-550 (b). The plaintiff's construction in essence makes a spouse a third party guarantor as a matter of law. Further, such an expansive construction would clearly run counter to both our mandate against "enlarg[ing] [the statute's] scope by the mechanics of construction"; *Yale University School of Medicine* v. *Collier*, supra, 206 Conn. 37; as well as the legislature's efforts to protect the rights of prospective nursing home residents and their access to nursing home facilities. See General Statutes § 19a-550; see also General Statutes § 19a-533 (b) (prohibiting discrimination against indigent applicants and requiring admission to nursing home on first come first serve basis).[9]

We therefore conclude that excluding nursing home expenses from spousal liability under § 46b-37 (b) creates "a harmonious and consistent body of law," and one that "makes sense within the overall legislative scheme." (Internal quotation marks omitted.) *Sokaitis* v. *Bakaysa*, supra, 293 Conn. 23. In so doing, we also conclude that the trial court properly determined that § 46b-37 (b) (4) does not include services or general expenses associated with nursing home care, including

---

[9] Connecticut's patients' bill of rights is similar to the federal statute, 42 U.S.C. § 1396r (c) (5) (A), which provides in relevant part: "With respect to admissions practices, a nursing facility must . . .

"(ii) not require a third party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility . . . ."

food and medicine consumed by nursing home residents.

## II

The plaintiff next argues that the trial court should have treated the defendant's motion for summary judgment as a motion to strike. The plaintiff claims that the trial court's failure to treat the motion for summary judgment as a motion to strike improperly precluded the plaintiff from repleading its cause of action. In response, the defendant contends that the trial court properly granted her motion for summary judgment because the plaintiff's claim was based on a statutory provision that, as a matter of law, could not provide a basis for its cause of action. We agree with the trial court that repleading would have been "fruitless" for the plaintiff and, therefore, that the grant of the motion for summary judgment was appropriate.

We have previously stated "that the use of a motion for summary judgment to challenge the legal sufficiency of a complaint is appropriate when the complaint fails to set forth a cause of action and the defendant can establish that the defect could not be cured by repleading." *Larobina* v. *McDonald*, 274 Conn. 394, 401, 876 A.2d 522 (2005). Here, the complaint, which contained all relevant and necessary facts, cannot be cured through repleading because, as discussed in part I of this opinion, nursing home expenses simply are excluded from the scope of § 46b-37 (b).[10] See id., 403; compare *Carrasquillo* v. *Carlson*, 90 Conn. App. 705, 714, 880 A.2d 904 (2005) (repleading would not cure defects because party could not plead further facts to allege valid cause of action), with *American Progressive Life & Health Ins. Co. of New York* v. *Better Bene-*

---

[10] The plaintiff's failure to offer any alternative legal basis for its position before the trial court, or in its principal brief on appeal to this court, further highlights the legal inadequacy of the complaint.

*fits, LLC*, 292 Conn. 111, 124–25, 971 A.2d 17 (2009) (trial court should have treated motion for summary judgment as motion to strike where nonmoving party had offered to amend pleadings to clarify factual basis for claim).

### III

Finally, the plaintiff argues that the trial court improperly granted summary judgment because there existed genuine issues of material fact. See *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, supra, 290 Conn. 786–87. The plaintiff's summary claim that "the trial court did not view the evidence in the light most favorable to the plaintiff" warrants little discussion, as the plaintiff has failed to point to any disputed material facts, and the sole material issue before the trial court was a legal one, which we have decided in favor of the defendant and which controls the disposition of this case.[11]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[11] Because we base our decision on our construction of § 46b-37, we need not reach the defendant's argument that § 46b-37 is preempted by federal law.